UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALLEGRA ESTELLA LATTA,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

6:19-CV-6439
DECISION & ORDER

---

On June 17, 2019, the plaintiff, Allegra Estella Latta, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On December 20, 2019, Latta moved for judgment on the pleadings, Docket Item 13; on January 13, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on February 3, 2020, Latta replied, Docket Item 16.

For the reasons stated below, this Court grants Latta's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Latta argues that the ALJ erred in three ways. Docket Item 13-1. First, Latta argues that the ALJ erred in failing to consider whether her bulimia nervosa was a severe impairment at step two. *Id.* at 1. Second, Latta argues that the ALJ erred in finding that her drug addiction and alcoholism ("DAA") were material to her disability determination. *Id.* at 1. Third, she argues that the ALJ's residual functional capacity finding is not supported by substantial evidence. *Id.* This Court agrees that the ALJ

2

erred in his DAA materiality determination and therefore remands the matter to the Commissioner.

## II.   ANALYSIS

### A. Step Two

"[T]he Social Security Amendments Act . . . define[s] 'disability' as 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment.'" *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (quoting 42 U.S.C. § 423(d)(1)(A)). At step two of the sequential evaluation process, a disability claim is rejected only "[i]f [a claimant does] not have any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The severity requirement at step two "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely that they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen*, 482 U.S. at 153. But the step two analysis is designed only to "weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Id.* at 156 (O'Connor, J., concurring);[2] *see also Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) ("Step Two may do no more than screen out *de minimis* claims."). Conversely, step two "does not permit the Secretary to deny benefits

---

[2]   Justice O'Connor's concurring opinion in *Bowen* has been recognized as the controlling interpretation of the step two standard. *See Dixon v. Shalala*, 54 F.3d 1019, 1030-31 (2d Cir. 1995).

to a claimant who may fit within the statutory definition without determining whether the impairment prevents the claimant from engaging in either [her] prior work or substantial gainful employment that, in light of the claimant's age, education, and experience, is available to [her] in the national economy." *Bowen*, 482 U.S. at 158. In other words, "[o]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis." *Id.*

An ALJ's decision at step two that an impairment is not severe must be "supported by 'substantial evidence' in the record as a whole." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). A step two finding that a claimant's impairment "is non-severe is not supported by substantial evidence [when] the evidence on which it is based is inconsistent with evidence that [the claimant's impairment] significantly impaired her ability to do basic work activities." *Parker-Grose v. Astrue*, 462 F. App'x 16, 17-18 (2d Cir. 2012). On the other hand, "[a] step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe." *Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *2 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).

If a court finds that the ALJ's step two determination is not supported by substantial evidence, it then must evaluate whether that error prejudiced the claimant. "[C]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings." *Id.* at *3 (quoting *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)). "[W]hen an administrative law judge identifies some severe impairments at Step 2, and

4

then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non[-]severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Id.* (quoting *Snyder*, 2014 WL 3107962, at *5); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps").

      Here, there is substantial evidence in the record that Latta suffers from bulimia nervosa. For example, during an office visit with Marcy L. Soprano, N.P., in October 2016, Latta reported vomiting up to "7 times a day." *See* Docket Item 7-7 at 230. Similar treatment notes, extending from 2015 through 2018, indicate that Latta consistently experienced symptoms of the disorder. *See, e.g.*, Docket Item 7-7 at 308 (May 2015 treatment note stating that Latta "endorses active binging and purging" and "has been diagnosed historically with bulimia nervosa"); Docket Item 7-9 at 221 (December 2015 treatment note stating that Latta "has [had] Bulimia since 17 and her current behavior is once a week"); Docket Item 7-9 at 39 (August 2016 treatment note stating that Latta "is aware she has an underlying eating disorder and states that when she is not drinking she will resort to bulimia"); Docket Item 7-7 at 242 (March 2017 treatment note stating that Latta "had bulimia for many years" and "still does this at times"); Docket Item 7-9 at 216 (May 2018 treatment note stating that Latta "is currently binging and purging almost daily"). But the ALJ failed to explain why he did not consider Latta's bulimia to be severe. Even worse, the ALJ never even mentioned bulimia nervosa in his step two analysis. *See* Docket Item 7-2 at 16. Thus, this Court agrees with Latta that the ALJ erred at step two.

The ALJ did, however, consider Latta's bulimia at step four. For example, the ALJ acknowledged that Latta exhibited "symptoms of bulimia," stating that she "continue[d] to engage in binge eating and purging." *Id.* at 26. At the hearing, the ALJ specifically asked the medical expert, Lillie McCain, Ph.D., to "speak to [him] a little bit about what [she] saw with the binging and purging." *See id.* at 73. And the ALJ credited Dr. McCain's opinion that "while [Latta's] behavior is consistent with bulimia, her symptoms are not sufficiently severe to render [Latta] disabled." *Id.* at 23. The Court finds no deficiency in that assessment.

Thus, this Court finds that although the ALJ erred at step two, the error was harmless. *See Guerra*, 2018 WL 3751292, at *2 ("[W]hen functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." (quoting *Snyder*, 2014 WL 3107962, at *5)).

**B. DAA Materiality**

Latta also contends that the ALJ erroneously determined that DAA was a material factor contributing to her disability. More specifically, she argues that her co-occurring mental health impairments are not separable from her substance abuse and that the evidence therefore was insufficient to find her DAA to be material. *See* Docket Item 13-1 at 1. This Court agrees.

The Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

The key to determining whether alcoholism or drug addiction is a material contributing factor is whether the claimant still would meet the definition of disabled under the Act if she stopped using alcohol or drugs.  20 C.F.R. §§ 404.1535(b)(1), and 416.935(b)(1).  If the claimant's remaining limitations would not be disabling, her DAA is a material contributing factor, and benefits will be denied.  20 C.F.R. § 404.1535(b)(2), and 416.935(b)(2).  On the other hand, if the claimant's remaining limitations are disabling apart from DAA, the claimant is disabled independent of her DAA, and disability benefits will be granted.  20 C.F.R. §§ 404.1535(c), and 416.935(c).

Under SSR 13-2p, to support a finding of materiality, evidence in the record must establish that "a claimant with a co-occurring mental disorder(s) [sic] would not be disabled in the absence of DAA."  *Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA)*, SSR 13-2p, 2013 WL 621536, at *9 (Feb. 20, 2013). When substance abuse "cannot be parsed out from mental health limitations, substance abuse *cannot* be held material to a finding of disability."  *Williams v. Colvin*, No. 1:13-CV-01186 (MAT), 2016 WL 1553443, at *1 (W.D.N.Y. Apr. 18, 2016) (emphasis added); *see also Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 274 (W.D.N.Y. 2005) ("When it is not possible to separate mental restrictions and limitations imposed by the DAA and the various mental disorders shown by the evidence, a finding of 'not material' would be appropriate." (quoting SSA Emergency Teletype, "Questions and Answers Concerning DAA from July 2, 1996 Teleconference—Medical Adjudicators—ACTIONS," August 30, 1996, Answer 29)).  In other words, an ALJ "will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would

7

improve to the point of nondisability in the absence of DAA." SSR 13-2p, 2013 WL 621536, at *9.

"[C]laimants bear the burden of proving DAA immateriality." *Cage v. Comm'r of Soc. Sec*, 692 F.3d 118, 123 (2d Cir. 2012). "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability," however, "the claimant's burden has been met and an award of benefits must follow. In colloquial terms, on the issue of the materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003).

Here, Dr. McCain testified that Latta's "functional behavior and related symptoms are convoluted by long term and sustained use of alcohol." Docket Item 7-2 at 61. Therefore, Dr. McCain stated, "the effects of alcohol and other substances [on Latta] . . . can't [be] separate[d] . . . out because the alcohol use is consistently there." *Id.* at 62; *see also id.* at 22 (ALJ's acknowledging that "Dr. McCain stated that the effects of [Latta]'s alcohol use are inseparable from the effects of her mental health disorders").

The ALJ commented at the hearing that "one of the things that I think gives me pause is to say that there would be no limitations in function absent the alcohol and I understand that [Dr. McCain has] talked at some length about the way that alcohol permeates the file." *Id.* at 80. The ALJ then asked Dr. McCain whether "there [is] any support in the file that says that there is at least more than mild . . . limitations in functioning from anxiety and depression?" *Id.* at 81. Dr. MCain replied:

> In . . . my opinion, Your Honor, there wouldn't be because
> the alcohol use goes back to age 14 . . . and because [Latta]
> has maintained or at least for a while maintained a
> relationship, she was married, she has children, and I

8

> recognize that the substance use and abuse resulted in the children being removed, she's maintaining herself in a relationship now.  She has a history of having worked as a hairdresser.  She has a degree—well, not a degree, but she has training as a hairdresser.

*Id.*  Dr. McCain then added that she "just believe[s] that [Latta] would be able to function without any limitations" if she stopped drinking.  *Id.*

The ALJ "accord[ed] great weight to the opinion of Dr. McCain," *id.* at 23, and ultimately concluded that Latta's "impairments would not be disabling in the absence of alcohol abuse," *id.* at 26.  More specifically, the ALJ noted that Latta "has had brief episodes of sobriety, during which her functioning improved significantly."  *Id.*  But the ALJ did not explain how he was able to "parse[ ] out [Latta's DAA] from [her] mental health limitations," *see Williams*, 2016 WL 1553443, at *6, despite Dr. McCain's testimony that it was impossible to do so.  Nor did the ALJ acknowledge the other evidence in the record suggesting that Latta's co-occurring mental health disorders were intertwined with her substance abuse.  *See, e.g.*, Docket Item 7-9 at 241 (treatment notes of Andy Petronio, LCSW, stating that it is "difficult at this point to ascertain what symptoms are related to alcoholism and withdrawal vs. separate psychiatric symptoms"); Docket Item 7-8 at 252 (treatment notes of Amy B. Meier, LCSW, reporting a "long [history] of anxiety and depression and that [Latta] has often used alcohol to self[-]medicate"); Docket Item 7-7 at 242 (treatment notes of Jessica Wagner, LMHC, reporting that [Latta] "started using alcohol . . . to cope with her depression and anxiety" and "now she is sober, it is difficult and things have gotten worse related to her mental health and depression").

Moreover, it appears that both Dr. McCain and the ALJ were considering Latta's DAA under the wrong standard.  As noted above, the ALJ asked Dr. McCain whether "there [is] any support in the file that says that there is at least more than mild . . . limitations in functioning from anxiety and depression?"  *Id.* at 81.  But that is not the correct question.  Under SSR 13-2p, evidence in the record must establish that "a claimant with a co-occurring mental disorder(s) [sic] *would not be* disabled in the absence of DAA."  SSR 13-2p, 2013 WL 621536, at *9 (emphasis added).  The ALJ therefore should have asked whether there was any evidence that Latta *would not have* "more than mild . . . limitations in functioning" absent her DAA.  As explained above, if there is no evidence either way because the DAA cannot be separated out, then the ALJ must find that the DAA is not material.  *See Brueggemann*, 348 F.3d at 693; *Williams*, 2016 WL 1553443, at *1; *Frankhauser*, 403 F. Supp. 2d at 274.

In much the same way, Dr. McCain noted that Latta's "alcohol use goes back to age 14" in support of her opinion that there was no evidence that Latta's other mental disorders would be disabling absent the DAA.[3]  But again, the question should have been whether there was any evidence that Latta would not be disabled absent the DAA.  And the fact that Latta's DAA dates back to her very early teenage years underscores the difficultly in determining Latta's functionality were she to stop drinking.[4]

---

[3] This opinion appears to be little more than a hunch.  *See* Docket Item 7-2 at 81 (even though the effects of alcohol and other substances cannot be separated out, Dr. McCain "just believe[s]" that Latta would not be disabled if she stopped drinking).

[4] Dr. McCain also did not explain how the facts that Latta had at times "maintained a relationship," "has children . . . [who were] removed" as a result of her DAA, and had previous periods of working as a hairdresser support her hunch that Latta would be able function absent her DAA.

What is more, the connection between Latta's bulimia and DAA also suggests that it is impossible to determine whether she would be able to function if she stopped drinking. Indeed, the record clearly demonstrates that when Latta is drinking, her bulimia is under control, but when she is sober, she is severely bulimic. For example, in May 2017, Latta told Stephanie Bourne, LMSW, that "it's one or the other, when I'm drinking, my eating disorder is managed. When I'm not drinking, I'm binging and purging. It's always been like that." See Docket Item 7-7 at 308. Likewise, Ronald Guzman, M.D., reported in August 2016 that Latta resorts to bulimia "when she is not drinking" but if she is drinking, the bulimia "is virtually a non-issue." See Docket Item 7-9 at 39. And on October 11, 2016, Latta saw Nurse Soprano, who noted that Latta had been sober for six months, yet her "bulimia cont[inued] to be [an] active problem." See Docket Item 7-7 at 230. So it may well be that if Latta stopped drinking for an extended period of time, her bulimia would become disabling. But the ALJ never even considered that possibility.

In sum, the ALJ failed to explain how the evidence in the record established that Latta's "co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA," SSR 13-2p, 2013 WL 621536, at *9, despite the evidence—including Dr. McCain's testimony—that those disorders could not be separated from Latta's alcoholism. That was error. Accordingly, the Court remands so that the Commissioner can appropriately address and reconsider the materiality of Latta's DAA.[5]

---

[5] The Court "will not reach the remaining issues raised by [Latta] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the

11

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Latta's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 20, 2020
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").